**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3032
_____

UNITED STATES OF AMERICA

v.

LAQUITA STEPHENS,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 1-10-cr-00041-001)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 25, 2012

Before:   HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Filed: March 29, 2013 )
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Laquita Stephens appeals an order of the District Court revoking her probation and sentencing her to five months' imprisonment, to be followed by two years of supervised release. Stephens argues that the District Court violated her Fifth Amendment right to

due process by admitting hearsay evidence at the revocation hearing.  We reject this argument and will affirm the District Court's judgment.

## I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case.  Accordingly, we set forth only those facts necessary to our analysis.

After entering a guilty plea to one count of providing contraband to a prison inmate, in violation of 18 U.S.C. §§ 1791(a)(1) and 1791(b)(3), Stephens was sentenced to three years' probation by the United States District Court for the Western District of Pennsylvania.  General conditions of Stephens' release included that she not commit another crime; that she not associate with persons with felony convictions; and that she follow her probation officer's instructions.  Stephens was also subject to several special conditions, including that she perform 100 hours of community service.

On March 6, 2012, the United States Probation Office for the Western District of New York, the district in which Stephens was living, filed a petition charging Stephens with three probation violations.  The first violation was based upon Stephens' arrest for third degree assault, in violation of New York State Penal Law, following her involvement in an altercation with a waitress, Antonia Lee, at a Denny's restaurant in Cheektowaga, New York, on February 16, 2012.[1]  Also involved in the altercation was Stephens' friend Jessica Barager, a convicted felon, whose presence during the incident

---

[1] Stephens was charged with violating New York State Penal Law § 120.00(1), which provides that "[a] person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."  N.Y. Penal Law § 120.00(1).

2

formed the basis for the second violation. The third violation was predicated upon Stephens' failure to perform community service and follow her probation officer's instructions regarding, inter alia, completing weekly community service.

The District Court held a revocation hearing on May 4, 2012, and rejected the parties' proposed resolution that Stephens receive a sentence of four months' imprisonment, with no term of post-release supervision. When Stephens indicated that she would not admit to having assaulted Lee, the Government requested a continuance "so that [it] could have a witness [present] with regard to the underlying assault allegation that forms really the primary basis for the revocation[.]" (A. 32.) The District Court granted the request.

A second hearing was held on July 12, 2012. The District Court heard testimony from Detective Robert Laskowski, the Cheektowaga Police Department detective assigned to investigate the alleged assault. When Laskowski began to testify to statements Lee made to him concerning the altercation, defense counsel objected, arguing that admission of Lee's statements violated Stephens' right to confront adverse witnesses pursuant to Federal Rule of Criminal Procedure 32.1(b)(2)(C).[2] The Government

---

[2] Rule 32.1(b)(2) provides:

> Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
> . . .
>
> > (C) an opportunity to appear, present evidence, and question any adverse witness unless the court

3

responded by explaining that it sent Lee a subpoena via certified mail with a return receipt requested; a signed receipt was never returned; and Lee did not appear for the hearing. The District Court declined to rule on the objection at that time, explaining that it would hear the evidence and counsels' arguments before determining whether Lee's statements were admissible.

The District Court proceeded to hear testimony from Laskowski about his conversations with Lee, and the signed written statement he took from Lee at police headquarters on February 21, 2012, wherein Lee explained the circumstances of the altercation and her subsequent injuries and medical treatment. Laskowski testified that he observed Lee's injuries – facial scratches and a reddened eye – during a face-to-face meeting. Additionally, Laskowski explained that after receiving a phone call from the Denny's manager informing him that one of the assailants left behind a cell phone containing the name "Laquita Stephens," he found a picture of Stephens in the police department's archives and later met with Lee to conduct a photo array identification procedure, during which Lee identified Stephens as one of her assailants. According to Laskowski, he also examined Stephens' Facebook profile page, and discovered a photograph of a woman who matched Lee's description of the second assailant, later identified as Barager. Finally, Laskowski testified that during a February 23, 2012 phone call with Stephens, she admitted she was "involved in a fight with a waitress" at Denny's,

---

determines that the interest of justice does not require
the witness to appear . . . .

4

and identified Barager as the other woman present on the night of the incident. (A. 63 (internal quotation marks omitted).)

The District Court also heard testimony from Barager, who described in some detail the altercation with Lee. Barager admitted pulling off Lee's wig, punching her in the face, and then brawling with Lee. Barager also acknowledged that Stephens became involved in the fray, grabbing Lee by the shoulder and pulling Lee off Barager, who then proceeded to tackle Lee and continue the fight. According to Barager, Stephens did not hit Lee.

After reviewing the evidence presented,[3] the District Court determined that Lee's hearsay statements were admissible and concluded that the Government proved each of the charged violations.[4] Each of the violations constituted Grade C violations, including the assault. Combined with Stephens' category II criminal history, an advisory guideline imprisonment range of four to ten months was applicable.[5]

## II.

Stephens challenges the District Court's determination that Lee's hearsay statements were admissible pursuant to Rule 32.1(b)(2)(C), arguing that admission of the

---

[3] The District Court also heard testimony from Stephens' probation officer concerning the second and third charged violations.

[4] Stephens does not challenge the District Court's findings with regard to the second and third violations, acknowledging that these violations were "properly established." (Appellant's Br. 33, 40.)

[5] Even if the District Court had not found that Stephens had committed the assault, Stephens still faced an advisory guidelines range of four to ten months for the other admitted violations.

statements violated her Fifth Amendment right to confront adverse witnesses.[6] We

generally review "[t]he admissibility of hearsay evidence under Rule 32.1(b)(2)(C)" for

abuse of discretion. *United States v. Lloyd*, 566 F.3d 341, 344 (3d Cir. 2009).

As we explained in *Lloyd*, the Fifth Amendment's guarantee of "[d]ue process

requires that supervised releasees retain at least a limited right to confront adverse

witnesses in a revocation hearing." *Id.* at 343. This requirement has "been incorporated

into Federal Rule of Criminal Procedure 32.1(b)," *id.*, which provides that the subject of a

revocation hearing is entitled to "an opportunity to . . . question any adverse witness

unless the court determines that the interest of justice does not require the witness to

appear." Fed. R. Crim. P. 32.1(b)(2)(C).

In *Lloyd*, we set forth the balancing test courts must apply when determining

whether to admit a hearsay statement pursuant to Rule 32.1(b)(2)(C):

> "[T]he court is to balance the person's interest in the
> constitutionally guaranteed right to confrontation against the
> government's good cause for denying it." The reliability of
> proffered hearsay is a principal factor, although not the sole
> factor, relevant to the releasee's interest in confrontation. To
> outweigh this interest, the Government must, in the typical
> case, provide good cause for a hearsay declarant's absence.
> As the language of the Advisory Committee Notes indicates,
> the releasee's interest in confrontation – which encompasses
> reliability – is an independent factor that should be analyzed
> separately from cause.
>
> In some cases, the releasee's interest in confrontation may be
> overwhelmed by the hearsay's reliability such that the

---

[6] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have
appellate jurisdiction pursuant to 28 U.S.C. § 1291.

> Government need not show cause for a declarant's absence. Accordingly, we reject a *per se* rule that a district court's failure to explicitly address cause amounts to reversible error in all cases. Nevertheless, a releasee may have a legitimate interest in confrontation and cross-examination even when a declarant's out-of-court statement bears some indicia of reliability, and district courts should normally address both factors when ruling on the admissibility of hearsay evidence in a revocation hearing.

566 F.3d at 344-45 (citing Fed. R. Crim. P. 32.1(b)(2)(C) advisory committee's note).

In holding that Lee's hearsay statements were admissible, the District Court applied the test set forth in *Lloyd*:

> I have specifically considered the requirements as set forth . . . in *United States v. Lloyd*, 566 F.3d 341. In that regard, I found the testimony from the detective . . . including the admission by the defendant to the detective, as well as the various documents introduced into evidence, including the photo spread identification document, as well as the written statement by the victim, all to be highly, extremely reliable in the overall analysis as to whether they should be admitted.

(A. 112.) Addressing the issue of cause, the District Court explained:

> I find that the government sent a subpoena to the victim. For reasons we do not know, the victim chose not to appear. Alternatively, in my view, this is the type of case, given what I view is the overwhelming reliability of the other independent evidence, that cause would properly and independently be unnecessary consistent with . . . *Lloyd*.

(A. 113.)

Stephens first argues that the District Court erred when it found that the Government established good cause for failing to call Lee at the hearing. Specifically, Stephens contends that after a signed receipt confirming delivery of the subpoena was not returned, the Government should have "ma[d]e a telephone call to Lee," or "attempt[ed]

7

to personally serve her with a subpoena as is required by the Federal Rules of Criminal Procedure for proper service." (Appellant's Br. 21.) Stephens also takes issue with the District Court's finding that the Government subpoenaed Lee, and "[f]or reasons we do not know, [she] chose not to appear." (A. 113.) According to Stephens, this factual finding is "clearly erroneous," because "the fact that the government did not receive a signed receipt establishing the delivery of the subpoena[] established that Lee did not receive the subpoena." [7] (Appellant's Br. 22.)

We reject Stephens' arguments and hold that the District Court did not err in finding that the Government discharged its burden to show good cause. Our sister circuits have found that the Government established good cause for failure to produce a hearsay declarant for a revocation hearing, even where the Government made the same or lesser effort to procure the declarant's attendance than the Government made in this case. For example, in *United States v. Martin*, 371 F.3d 446 (8th Cir. 2004), the Eighth Circuit found that the District Court did not abuse its discretion in admitting hearsay statements at a revocation hearing where, even though the Government did not subpoena the declarant, it provided a "reasonably satisfactory explanation" for the declarant's absence – the declarant was out of state and could not be located – and the statements were "sufficiently reliable." 371 F.3d at 448-49; *see also Curtis v. Chester*, 626 F.3d 540, 547-48 (10th Cir. 2010) (finding that the Government satisfied its burden to show cause for failing to produce a hearsay declarant where the Government demonstrated that "the

---

[7] As Stephens points out, the Government makes no arguments in its brief concerning the District Court's finding of good cause.

victim could not be located," despite the Government's efforts to subpoena her and defense counsel's attempts to locate her).

However, even if the District Court erred in finding good cause for the Government's failure to produce Lee, it did not err in determining that Stephens' interest in confrontation was "overwhelmed" by the reliability of Lee's statement such that the Government was excused from showing cause. *Lloyd*, 566 F.3d at 345. Indicia of a hearsay statement's reliability include whether the statement was "given under oath, replete with detail, or supported by corroborating evidence" such as "physical evidence, independent testimony, or the defendant's own admissions." *Id.* (citations omitted). "Conversely, out-of-court statements reflecting an adversarial relationship with the accused, or containing multiple layers of hearsay have been recognized as unreliable." *Id.* (citations omitted).

Stephens argues that "[t]he only real indicia of reliability" pertaining to Lee's written statement is that it was given under oath. (Appellant's Br. 39.) We disagree. The reliability of Lee's written statement to police is bolstered not only by the fact that it was given under criminal penalty of making a false statement, but also by each of the other indicia of reliability identified by this Court in *Lloyd*. *See* 566 F.3d at 345.

First, unlike in *Lloyd*, where "the record [was] devoid of independent evidence corroborating the version of events described in the [hearsay statement]," *id.*, the record in this case contains evidence that corroborates Lee's statements. For example, Laskowski testified that when he met with Lee on February 20, 2012, "she had scratches on her face and her eye was red," (A. 52), observations which corroborate Lee's

9

description of her injuries. Laskowski also testified that one of the assailants left a cell phone containing Stephens' name at the scene of the alleged assault, and that Lee later identified Stephens as one of the two women who assaulted her during a photo identification line up procedure. Moreover, Stephens admitted to Laskowski that she was "involved in a fight with a waitress." (A. 63 (internal quotation marks omitted.)) Indeed, even Barager testified that Stephens participated in the melee by grabbing Lee and pulling her off Barager, after which Barager again assaulted Lee.

Furthermore, while the statements in *Lloyd* "lack[ed] detail" and contained only a "cursory" description of the incident that formed the basis for the revocation charge, 566 F.3d at 345, Lee's written statement contains substantial detail about the alleged assault. The statement consists of twenty questions and answers, and contains Lee's description of the specific sequence of events leading up to, during, and after the alleged assault. The statement also details Lee's injuries, her subsequent medical treatment, and the photo identification procedure during which she identified Stephens as an assailant.

Stephens persists that the adversarial relationship between Lee and Stephens "supports a finding of unreliability." (Appellant's Br. 39.) Although Stephens is correct that an adversarial relationship between the declarant and releasee is an "indicia of *unreliability*," *id.* at 346 (emphasis in original), this factor alone does not preclude a finding that Lee's statement was sufficiently reliable such that the Government was excused from establishing good cause. Unlike in *Lloyd*, where "the Government fail[ed] to proffer a single legitimate indicium of reliability for the statements," *id.*, in this case, as discussed above, all of the indicia of reliability articulated in *Lloyd* are present.

10

Furthermore, while the statement at issue in *Lloyd* contained "layer upon layer of unsubstantiated" hearsay, *id.*, Lee's statements do not contain multiple levels of hearsay.

Thus, even if the District Court erred in finding that the Government had good cause for not producing Lee at the hearing, it correctly concluded that this is a case where the releasee's interest in confrontation is "overwhelmed by the hearsay's reliability such that the Government need not show cause for [the] declarant's absence." *Id.* at 345. Accordingly, we cannot say the District Court abused its discretion in admitting Lee's hearsay statement and finding that Stephens violated the conditions of her supervised release by assaulting Lee.

III.

For the foregoing reasons, we will affirm the District Court's judgment.